Thank you, Your Honors. May it please the Court, Joel Rothman and my co-counsel, Carl Schwenker, on behalf of Bruce Munro. Counsel, let me jump right in here. I want to jump in on jurisdiction. Yes. Before we get to the merits. I was going there too. Good. I'm glad. So there's a party, a defendant, that was served properly, that was defaulted, but no default judgment was entered, correct? Absolutely. All right. You agree that normally that that would mean that this is not a final judgment? Even though it says final judgment. Well, we have case law legion, I've written some myself, which has said that whatever label is put on top of something does not make it a final judgment. It either is or is not, not what it's stamped as. Exactly. Okay. So we agree with that. And normally in that circumstance, you would need a Rule 54B certification that the issues are severable and that the interest of justice would be furthered if we heard this appeal, despite the fact that it's not final, right? Yes. So why shouldn't we dismiss? Well, Your Honor, there are several issues going on here that — Fictional one. We'll get to the other one. Sure. Well, I think counsel — I'm sorry. I think the defendants also concede in their brief that this is not a final judgment if you look at their statement on page 39 of their brief that — Why shouldn't we dismiss for lack of appellate jurisdiction? Okay. There is a need in connection with this court's determination for some instruction, not in the way of an advisory opinion, but there is a problem, several problems, with the district court's decision. And those can — The district court may have erred from this way to Sunday, but if we don't have appellate jurisdiction, we can't get beyond that question. So I'm asking — what I need you to answer for me, and we'll get to the merits. What I need you to answer for me first, though, is how, if there is a party pending, and Rule 54B is clear that that means it's not a final judgment, and the only exception is where the district court certifies and says it's in the interest of justice to have an interlocutory appeal, and none of the other interlocutory appeal exceptions in 1292 be applied, how could we — how do we have jurisdiction to decide this case? I agree with Your Honor. Okay. I do. And the problem that we have is highlighted in the charts that we included in our initial brief. And these charts, which begin by reference to the top of page 33 in the court stamp, lay out all the different claims that were asserted and what was asserted in terms of copyright, what was asserted in terms of 1202 against all the different defendants. Including G-lights. Including G-lights. And the problem is that even if you look at the district court's decision as to the defendants who are here before the court and the plaintiff's claims against those defendants, the district court didn't adjudicate all of those either. I don't think we could agree more that the summary judgment order does not include any decision regarding G-lights, and who could blame the district court? It was defaulted party. No one filed anything. Right. And I'm not even talking about G-lights, though. What I'm saying to Your Honors is that there were five, okay, works that were alleged to have been infringed. Let me just stop you there. Whether the district court didn't explain itself as well as you'd like it to is a separate issue. And we'll get there. Okay. I just want to be clear. You agree that we would have to dismiss for lack of appellate jurisdiction because the judgment is not really final, despite what it's stamped on top, because there's a party that has been defaulted and no judgment has been entered? Yes. Okay. It would need to be dismissed. It would need to be remanded. Yes. For the purpose of the court making a final determination if it's going to be going up on appeal. So let's get to the heart of what you want to talk about here. Right. Go ahead. So if you look at the district court's decision on copyright, right, what we have with reference to these charts is that there are numerous works alleged. One of them is actually a registered work, and we're not talking about the one that the district court said was refused by the Copyright Office. Let me ask you a basic question. We're looking at these light displays, and I understand the arguments that the other side has made that these light displays, they're arguing, are not copyrightable. But I want to get an understanding of how these light displays are set up. So we have the individual lights that are arranged outdoors on a landscape, but as I understand it, your client, Mr. Monroe, does not actually do the installation of the exhibit himself. Is that correct? He has people who do that for him. So what he does is he goes out, scopes out the landscape, and the other members of his studio, right, with him will do, put where they need to go, put the glowing orbs, the LCD projectors, the right color wheels. You said where they're supposed to go. Does he design the installation? Absolutely. Okay. Absolutely. These are Bruce Monroe's conceptions. As we discussed in the brief, it came to him in a dream, and this is what artists do. There is a lot of confusion between both the parties and even the district court about what is actually claimed here and what is being argued here. There are three things that I think are in play here. One is the actual orbs themselves, which your client created some version of, and the LED lights that go into the vase for the firefly stuff. Right. There's those things individually. And I think your complaint and your argument could be read as that that's copyrightable and protected. There's the idea or the concept of putting this all together and having landscape art, and I think there's some indication, especially in deposition, that that's what he's seeking to protect. And then there's the third thing, and the third thing I think is the one where I'm having the most trouble with what the district court did here, which is the actual things that happened. In other words, he went to Pennsylvania, and he put this thing out, and he took pictures of it. That's an actual work of art that he did and was paid for, and to the extent that is copied and that's what is being argued here, I don't know that the district court ruled on that, and I don't know that that isn't copyrightable, and that can't form the basis of a DMCA claim. Right, and I agree with your honor 100 percent. Sir? My question is this, having laid that out. What is your actual claim? Is it Box 1, Box 2, or Box 3? I forgot about the first two boxes. Is it the individual orbs? Boxes 2 and 3, which are your Box 3, which was the Pennsylvania landscape, and Box 2, which are others like it, these vast landscape installations. Well, I understand others like it, but that's not Box 2. Box 2 is the idea of doing this. Oh, not the idea. I'm sorry, I didn't hear the idea part. Definitely not the idea. Do you agree, but you are trying to seek a claim, and you have filed a claim, regarding the orbs themselves and the LED lights themselves? Not in this case. This case, again, looking at the charts, field of light is a... Look at what the chart says. I've read your complaint, and I've read the summary judgment. Got it. You agree? I just want you to say you are disclaiming any copyright argument here in this case regarding the orbs themselves or the LED lights themselves individually. It's not exactly. It's not the LED lights or the orbs themselves. It is, and we say this in the brief, the selection and arrangement of all of these parts, because any copyrightable work will always be made up of smaller parts that themselves are not copyrightable. I want to fast forward a little bit. On the DMCA claim regarding what I'll call the producer defendants, so not the Fairchild defendants, the producer defendants, and specifically regarding the pitch deck. So as I understand it, they went on the Internet, they put these pictures on there. Pictures didn't attribute those to your client, and that was distributed at least somewhat to other folks. How is the district court wrong that there was no genuine issue of material fact, that they had no idea, at least at the time that they put the pitch decks together, that those were actually the works of art of your client in Pennsylvania and et cetera? Well, because there is evidence in the record that it wasn't, it's cited in our reply brief and at page 18, as to all the evidence, my time is up, Your Honor. May I continue, finish? Yes. Thank you. As to all the evidence that demonstrated that they knew or should have known that what they were using was not belonging to them and they had no right to use it, and it was copyright protected, and it belonged to Bruce Monroe. We can obviously look at that ourselves, but thank you. Well, let me ask you a question. So this is going back to the questions that Judge Luck and I were asking. So your client takes the orbs on sticks, just for lack of a better description, and his vision is he will go and design an outdoor landscape with that, and I'm trying to get an understanding of what it is that he is protecting. So obviously the design of the lights and how they are installed, that is his artistic vision. I can understand that. Is he trying to copyright the concept of simply arranging lights across landscapes? Like could anybody go and take lights on sticks and arrange them on a landscape and run into a problem with your client? Or is it the actual design of the installation that your claim is being copied here? Yeah, it is the design, and it's not as simple as a light and a stick because what's actually happening is that there are 50 or 100 fiber optic, thin fiber optic that transmit light cables that are connected to a projector, and it's those fiber optics that go across the landscape and up through the pipe into the interior of the globe. And by using color wheels and other computer animation, it creates this undulating color effect that, and I've seen it twice now, and it is moving in a way emotionally that makes it art. To Judge Branch's question, it's the design itself and not the concept of designing landscape with lights in an undulating fashion? Absolutely not the concept. Okay. It's these designs, these specific copyrighted works that are, one was registered in the U.S. and the others are foreign works. So the defendants in this case, you're not quibbling with the fact they could have, in fact, had lights on sticks connected undulating, whether to music or different colors, and that's not going to run afoul of your client's design? Well, they could have a light on a stick here, a light on a stick there, but that isn't what they did. They copied the design. What they did? What they did was they saw our client's designs for the installations of these landscapes, and they copied that precisely. They took what Bruce Monroe did in Pennsylvania, in a number of installations in the U.K. It was shown to them by the manufacturer who was defaulted, and they copied exactly that. Okay, let me ask you a question. Sure. So each time he does an installation, I assume it's different from the one before, like it takes into account the way the landscape moves and the size of the space, and that he, I'm assuming, and correct me if I'm wrong, he has a vision for that space, and he draws it out, and that's his vision, right? Yes, there are similarities. For example, field of light will always be in a field. The characteristics will be different, but all the fields of light that were alleged in this case are extremely similar, but they're all in the design, the execution, and the view that the viewer has of it, not the idea of it. So how did the defendants in this case impermissibly use his design? They saw photographs of Bruce Monroe's designs, and they said, we want to show that. They put it in the pitch decks. They set up their field to imitate the field of light. So it's imitating the concept. Not the concept. It's imitating the exact design as it was presented by Bruce Monroe in Pennsylvania and in other places. Unless they know the distance between the light sticks and how each light stick is connected, how are they doing the exact design? I don't think they need to know the distance between the lights. I think you can see these things with your eyes, that here is what Bruce Monroe's field of light looks like. Let's copy it. So it's the overall visual effect that has been copied. The selection and arrangement of these orbs, the use of the fiber optics and everything that creates, what the Copyright Office in one case, and what has impressed others for the U.K. works, with this is what Bruce Monroe's works look like. Thank you. Thank you. And you do have five minutes for rebuttal. Thank you. Fifteen minutes, and can you help me with the question that I was just asking your opposing counsel? Was this an exact duplicate of a Bruce Monroe work, or is it the concept of lights in a field or somewhere in between? Thank you. Please, the Court. I will absolutely address your question right off the bat. We have here a situation where plaintiff has affirmatively disclaimed selection and arrangement in this case, then on appeal says it's not about the concept, it's about selection and arrangement. I just don't agree. Counsel, I've read the complaint. I've read the response to the summary judgment motion. I just don't agree with you. You're getting that from the deposition. I don't see how the plaintiff's deposition could disclaim any of this. It is clearly alleged that the designs themselves were infringed. Now, I think there might be other stuff that's alleged that's infringed, and that seems to be disclaimed. But I've read the response to summary judgment where they point out exactly what's pointed out here is you guys are focusing on the wrong thing. It's the design. I can read the parts to you, but I just don't see how this was not teed up to the district court here as both the individual elements, which I think the district court did rule on, and the design elements, which seemed to not be ruled on. So I think there's two parts to that, Your Honor, if I may address it. You are correct that they have disclaimed it in the deposition where he repeatedly disclaimed and disavowed, for example, asking repeatedly at 49-1, page 23 and 24, when using multiple of them, referring to the lights, is there a particular arrangement you're contending defendants have copied the witness? No, I'm not. And he continues on with that. Did defendants copy a layout of yours? Answer, no. It's nothing to do with the layout. It's the essence of the sculpture. And so he goes on with that throughout his deposition at multiple pages at 49-1. Right, but they're seeking the copyright. I mean, you know, they're talking in our terms, but he clearly is saying that I want him copywriting the designs. Is he not? So I don't agree that he's saying he wants it in the design. He is saying. First of all, the deposition in no way binds anybody to this, but let's go into the fiction that that's the case. Let's read page 78 together. What work of yours do you contend they're copying? Answer, we're going back to the beginning again. I can see this. There are three installations, or not three. There are installations that have different names. Field of Light, Forest of Light, River of Light. Those sculpture installations are made up of smaller sculptural pieces. So what they are doing is, in essence, taking the spirit of that installation, my sculptural work, and that they're copying it and placing it for commercial gain in Fairchild, you know, in the night garden exhibit. He clearly are talking about the design. I'm not saying they're successful. It may be, as the premise of Judge Branch's questions are, that they're just too different to be copywriting, or they didn't know about it. You could win on that, but I don't see how you could argue to us that this case isn't about the designs themselves. So just taking what the line that you're from. It's not worth taking the 15 minutes up to sit here and read depositions, but I have at least five separate instances where he's saying that, no, it's the designs themselves, not the individual elements, and not the concept or the idea. So to address your question and Judge Branch's question at once, let's assume for a moment that he's saying it is the design, it's not the concept. We don't have any evidence of what the design actually is. As Judge Branch pointed out, we don't have evidence of any sort of arrangement, the spacing, any sort of design choices. I mean, you have a picture of what it looks like. That's in the record of what Pennsylvania looked like. And then we have pictures of what Fairchild looked like, right? We do have photos that depict many lights in outdoor landscapes. You each have experts that say it's the same thing or not the same thing. I mean, again, I'm not saying that you win or lose on this. I just, this didn't seem to be litigated. The way this was teed up to us at the district court and the way you all argued it seems to be very different from what was actually alleged in the complaint, what was actually argued in summary judgment, what's actually argued to us. So we do have a situation where Mr. Monroe was repeatedly disclaiming and then when we asked about details regarding his designs of what the selection and arrangement could be or what the infringement was, he repeatedly backed away from that, constantly pointing back to the individual lights, which I understand counsel has disclaimed here today that the individual lights are then uncopyrightable or are not part of the infringement. So, you know, even then you can look at, you know, if you take the next step of is it substantially similar. Again, we have no evidence of what, other than a concept that in the record we have evidence that. The district court never got to the substantial similarity issue, right? That's correct. Okay. I want to get there, but I need to talk about jurisdiction first. So as I understand your position, it's that we do not need to dismiss because in these two other cases we did not dismiss where there was a defaulted party and an appeal was taken, right? That's correct. In the Gulf Coast fans case that Monroe actually cited in his reply, they made clear, and it was about sailing fans, they made clear there where a default judgment is not entered. The default judgment actually cannot be entered against G-lights on same or similar claims or similarly situated parties.  Then default judgment would not happen against them. In any event, if there are separate claims which there are alleged, this court can affirm the district court as to appellees and remand for the sole purpose of the district court entering judgment. The cases you rely on for that, and correct me if I'm wrong, are Orango and Coquina investments, right? Yes. Okay. It seems to me that there is a huge factual distinction in those cases and our other ones, legions of them, where we dismiss where there's a party still out there. In those cases, you're right that default judgment was not entered, but in both of those cases, there was a judicial determination of damages, and so all we were remanded for is for judgment to be entered consistent with the determination of damages. In other words, there was nothing more for the court to do other than the ministerial act of entering the judgment. Here, we are so early in the process. Both those cases were trials. There was no trial. There's been no determination of damages. There's no determination of liability even. You guys don't even think anyone's liable here. And those arguments would be the same for them, mostly, as they would be for you, most of them. So I'm failing to see how this is not our typical situation where there's just simply a judgment that's labeled final that really isn't final because it doesn't address the independent claims of a party who has not been adjudicated. I think, Your Honor, where you just made the distinction is independent claims. So there are claims alleged in the complaint against G. Lights that have absolutely nothing to do with the appellees, different works entirely, photos on G. Lights' website, things of that nature that I think under the case law, this court can affirm the district court as to the claims only against appellees. Okay. I think you're right on that, although there's some that do clearly overlap. But we would have to get a certification from the district court under 54B that that was the case, and we don't have that here. Right. Mr. Monroe did not seek that. I agree. Nor did you. Right. So we're here, and we have to do something with this. And it's clearly teed up. Our jurisdictional unit sent you a question. You all briefed it. You were told that it's an open question for us. And so I'm having trouble understanding how in this circumstance we have jurisdiction to decide the case. But I want to give you one last opportunity to convince me of that, and then I'll hear anything you have to say on the merits. I think the court in the Southern District was clear that as to the claims that have nothing to do with G-lights, those claims have been resolved in appellee's favor, and a final judgment was entered as to that. So I think it's appropriate for this court to consider the claims that are separate from G-lights. Show me what indicia of both the summary judgment order and the judgment itself would suggest that what you just said is right. That it's separate. That the district court said anything about the interdependent claims, the claims that were overlapping. It didn't speak to the interdependent claims, Your Honor. Right. It would have to look at the, you know, as you all would do, would look at the record and see that there are distinct claims. Just to give one example, under the DMCA, Monroe has claimed that a cartoon illustrated map of the night garden is somehow a DMCA violation, which obviously we've indicated is not under the relevant cases and Copyright Act. That has nothing to do with G-lights. That's just one example. Okay. Let me fast forward a little bit. So the district court, you agree, did not rule on the substantial similarity part. That issue is sort of still out there, and you may win on that at the end of the day. But what the district court did rule on with regard to the DMCA claims was knowledge, what you guys call the double standard. Walk me through some of the evidence with regard to Fairchild. So with regard to Fairchild, as I understand it, in 2014, they met with Mr. Monroe. They said, we like your stuff. Mr. Monroe sent them some stuff, and there was at least preliminary conversations that never got further. And then a couple years later, the producer defendants pitched the night garden concept, and Fairchild bought that and used it. How is that not evidence for which they knew that these designs, the specific ones here, they were the ones that are at issue here, were known to Fairchild when Fairchild decided to buy this stuff? So Your Honor is asking about Fairchild in connection with the DMCA claims. Yes. Respectfully, we never — Regarding knowledge. Knowledge, right. We never get to that issue as far as DMCA because the works Mr. Monroe is complaining about regarding the DMCA are not actually his works. So in the DMCA, the plain language of the statute makes clear there has to be a CMI affixed or removed. Affixed has to be false, right, so adding a marking of some kind that's false related to plaintiff's work, as well as removing related to plaintiff's work. And none of these were plaintiff's work. Regarding the knowledge as to Fairchild, just to address the record. How is it not his work? I'm confused by that. We've established it's his design, he puts the lights, or at least he directs his staff to put the lights over a concept. How is that not his work? So the evidence on the DMCA is actually undisputed that Mr. Monroe did not provide the lights, assembled each light, put them in the ground at Fairchild. So in that respect, it's defendant's own work. And if you look at the cases, Faulkner Press, Victor Elias, and Dex Media, which is out of the Middle District of Florida, they make clear that where a defendant's work, defendant creates their own work, it cannot be a violation under the DMCA. I just want to be clear, your position to us here is that we should adopt a position that I could copy the Mona Lisa stroke by stroke, letter by letter, but the fact that I did it myself means that it's protected under the DMCA? So that would not be a violation under the DMCA. Now, you know, you may have a claim under the exclusive right under a d- Show me where in the statute I would get that from. Under a direct infringement claim. You may have a direct infringement claim for copying, but not under the DMCA. I understand. Show me where in the statute you get that from. Right. So 1202 A and B, which are both of the subsection, 17 U.S.C. 1202, A requires that someone, as far as false copyright management information, shall- What A says is no person shall knowingly and with intent induce, enable, facilitate, or conceal infringement, providing that is false, and provided that it's- providing CMI that is false, right? How do you get from what you're talking about, that just because the defendant is the one who actually put the bulbs in as opposed to Mr. Monroe, that somehow he's- they're immunized from a CMA claim? So under- well, in the example you gave, just going back to the Mona Lisa, there was no marking on there, as you've indicated in the hypothetical. But as far as under the DMCA, all of the cases that have interpreted a DMCA claim have clearly and unequivocally held that where defendant creates their own work, even if they add their own marking. So for example, in the DexMedia case, there was a yellow pages directory. The defendant there used plaintiff's copyrighted photos that he owned, put them in the directory, and then on the front of it put copyright DexMedia. And they brought a number of copyright claims there, one of them being DMCA. And the court said the CMI is not false. Adding the DexMedia on the front of the directory is not false because it's defendant's own work. They are not holding out as owning the copyright in some way. And as to your example, Judge Luck, of the- Let's get past that for a second. So get me to the Scienter part. Why would the evidence that Fairchild had the information, had met with Mr. Monroe's people, knew about- at least a reasonable jury could find that they knew about this- why would that not be sufficient for Scienter? So in 2014, they had some representative from Mr. Monroe's office sent Ms. Zapata an email with some various links that she just responded, looks extraordinary. That was in 2014. Fast forward to the night garden where Ms. Zapata said she had no involvement in the lights and the installation or anything of that nature. She actually didn't recall Monroe until- I know she says that, but there's evidence that in their files, there's emails showing that she was the one, the same person, that she was the one who communicated with him, received this same information that ultimately made its way there. Can a jury look at that, despite her saying that, I forgot, I had no idea, I had this conversation, reasonably conclude that she knew that this was his work and then that work was then used at Fairchild? There's no evidence regarding CMI. Just to narrow it down, just the DMCA claim, there's no discussion of CMI related to Ms. Zapata emailing with a representative six years prior. Well, didn't she get the pictures? I think they sent her a folder with those pictures, and weren't those very pictures in the files of Fairchild when it was turned over in discovery? No, Your Honor. There were some emails. Just the email I just described where she responded and just said, you know, it looks extraordinary, but there was no meeting or anything of that kind. And importantly, there was no counter evidence here. So under the DMCA, first of all, there's no knowledge about CMI at all, let alone with the double center that she, Ms. Zapata, through Fairchild, the company that she is the COO for, that Ms. Zapata then removed or added some CMI. There's no evidence of that whatsoever or any identification of what the CMI would even be. And then to do that in addition to having an intent to induce, enable, conceal, or facilitate some sort of an infringement, there just simply is no evidence in the record of any of that. So the court correctly concluded that in the lack of any evidence, there was no weighing of any kind, and summary judgment was proper on those claims. I see that my time is up. If there's no further questions. Thank you. Thank you. All right, Mr. Ruffman, you have five minutes on rebuttal. Thank you. With great deference and respect to my friend, I think Your Honor indicated, Your Honor, Judge Locke, and it's clearly in the record that there are many overlapping claims. The second amended complaint, which is in the record at 69, asserts contributory copyright infringement, which would require there be direct infringement, the contributory infringement by G-Lites, and the direct infringement not just by G-Lites, but also by the defendants. And, in fact, in order for them to infringe, what they did was they showed in a listing to sell their wares, here's what you can do with them, and showed pictures of Bruce Monroe's displays. So they said, here, copy Bruce Monroe's displays, buy our equipment. Right? And that's what the defendants did. So the overlap is there, and it makes it, as Judge Locke, as you pointed out, inextricable. Back one second. Sure. I'm trying to get a grasp of the putting out the lights, and I know we went through that a little bit. But was there, like, a written design? Was he there saying put the light here, here, and here? Or did he just give this concept to the people that work for him and send them out to put lights out? Right. Your Honor, the photographs may not do them justice, but the photographs that are in the record do reflect that this isn't just some haphazard placing of lights everywhere. This isn't something that Your Honor can do in your backyard and run afoul of Mr. Monroe's displays. Because all the lights are connected with this fiber optic, and the fiber optic also glows along the landscape, and it creates this spiderweb type of effect. And then they go up through the bulbs and everything pulsates because what happens is it's projecting light into the light. It is extremely complicated. There was testimony that there were many designs. There was production of designs that were done and the training that members of his studio go through. Can you answer Judge Berger's question, which is? Sorry. I think the question, and I apologize if I'm misinterpreting it, but I thought the question was does he actually write a design scheme, or does he actually go and say this is where it needs to go? He does both. He does both. And there's a general concept of here's the landscape, here's what I sort of envision, and go put the lights on the ground. No, no, no. This is an active process. He testified, and there's evidence in the record, that he participates in the placement of these things. He developed the actual equipment to use to do it. This is a gentleman who, like Christo, is actively involved in creating what it is that is claimed to infringe here, to creating what they infringed here. This is a man who has, and it's all in the record, his process, his biography is in the record, and it explains how he goes out, how he initially got the inspiration at Ayers Rock in Australia, and how he attempted to put that inspiration, the thought in his head, and successfully did it using these orbs and the projectors and the fiber optics and to see the color and to see it undulate and to look at the pictures. This is not a haphazard thing. It is not something that one can come upon by chance, right? I would suggest the defendant's work, their copies are strikingly similar, but substantial similarity and similarity in any event is a jury issue. So I think if Your Honor really looks at the pictures and some of the other material, you'll see that this is not a chance we arranged a few lights and therefore we infringed. As Judge Luck indicated, there was a lot of advance notice for that. I'd also, just briefly, I've got 22 seconds. I love 1202. I argued Elias. I argued CoreLogic, which are two of the three circuit court decisions on it. The defendant's interpretation of 1202A, the falsification, which is essentially misrepresenting a work as your own, would destroy the statute. There is no more. My time is up. But there is no more statute by their interpretation. Thank you, Your Honors. Thank you all. We have your case under advisement, and we are in recess until tomorrow morning.